**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RUMALDO ALVAREZ-BERNABE,
a/k/a PRUDENCIO AGUILAR-
LOPEZ,

Defendant - Appellant.

No. 10-1199

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:09-CR-00506-WYD-1)**

Submitted on the briefs:[*]

John F. Walsh, United States Attorney, and John M. Canedy, Special Assistant
United States Attorney, Denver, Colorado, for Plaintiff - Appellee.

Raymond P. Moore, Federal Public Defender, and John T. Carlson, Assistant
Federal Public Defender, Denver, Colorado, for Defendant - Appellant.

Before **ANDERSON**, **BALDOCK**, and **BRORBY**, Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

**ANDERSON**, Circuit Judge.

_____

Defendant and appellant Rumaldo Alvarez-Bernabe (hereinafter referred to as "Mr. Alvarez") pled guilty to one count of reentering the United States illegally, after having been deported previously following an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(2).  He received a sentence of 57 months' imprisonment, followed by three years of supervised release.  Arguing that the sentence is substantively unreasonable, Mr. Alvarez appeals his sentence, which we affirm.

### BACKGROUND

Mr. Alvarez, a citizen of Mexico, was found on October 19, 2009, in the Montrose County Jail, in Montrose, Colorado.  He was being held on state criminal charges.  Agents from the United States Department of Homeland Security/Immigration and Customs Enforcement ("ICE") interviewed Mr. Alvarez and determined that he was a citizen of Mexico, and that he had been deported previously and had subsequently returned illegally to the United States.  As it turned out, Mr. Alvarez had been deported twice previously, the most recent occasion on October 4, 2005, and had then reentered the country illegally following those deportations.  Prior to the most recent deportation, Mr. Alvarez had been convicted (in October 2002) of the felony offense of possession of a

controlled substance with intent to distribute it. For that conviction, he was sentenced to four years in the Colorado Department of Corrections. That conviction constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43).

Mr. Alvarez pled guilty pursuant to a plea agreement. During the change of plea hearing, he was informed that, statutorily, he could be sentenced to prison for up to twenty years.

In preparation for calculating an advisory sentencing range under the United States Sentencing Commission Guidelines Manual ("USSG"), the United States Probation Office prepared a presentencing agreement ("PSR"). The PSR correctly calculated that the base offense level for Mr. Alvarez's crime was eight. That offense level was increased by sixteen levels, in accordance with USSG § 2L1.2(B)(1)(A)(i), because his most recent reentry followed a prior deportation after being convicted of a felony drug trafficking offense for which the sentence imposed exceeded thirteen months. The PSR also noted that Mr. Alvarez had pled guilty and been sentenced on two prior occasions (August 31, 1999, and March 27, 2001) for driving while impaired. Additionally, he had pled guilty and been sentenced in November 2009 for misdemeanor harassment.

Mr. Alvarez's total offense level was calculated to be twenty-one (eight plus sixteen, minus three for acceptance of responsibility) and his criminal history

category was IV.[1]  That combination yielded an advisory guidelines range of fifty-seven to seventy-one months.

Neither party submitted objections to the PSR, although Mr. Alvarez filed a pleading entitled "Defendant's Sentencing Memorandum in Support of Statutory Sentencing."  In this pleading, he requested that the district court impose a "non-Guideline" sentence of thirty-six months.  Among his arguments in support of his request for statutory sentencing, Mr. Alvarez argued that the sixteen-level enhancement applied pursuant to USSG § 2L1.2(B)(1)(A)(i) (because he had been convicted of the felony drug trafficking sentence and received a sentence in excess of thirteen months) was "unwarranted [and] unreasonable."  Def.'s Sentencing Mem. at 2, R. Vol. 1 at 44.  He also requested a downward departure on the ground that his criminal history category of IV overstated his criminality.  Accordingly, Mr. Alvarez sought a thirty-six month sentence, claiming that such a sentence was sufficient but not greater than necessary, would reflect the seriousness of the offense, would promote respect for the law, and would sufficiently deter him and others from returning to the United States.

In response to these arguments made by Mr. Alvarez, the probation office filed an addendum to the PSR.  It argued that the criminal history category of IV was proper and did not over-represent the seriousness of Mr. Alvarez's criminal history.  With respect to the sixteen-level enhancement, the addendum simply

---

[1]Mr. Alvarez garnered eight criminal history points.

stated, "There is no argument that the 16-level increase was applied incorrectly, and it is for the Court to decide if this enhancement is unjustified." Add. at S-1, Supplemental R. Vol. 1 at 22.

At the sentencing hearing held on April 30, 2010, the district court asked counsel from both sides if they had any objections to the PSR, "including the advisory guideline calculation and the sentencing recommendation." Sentencing Hr'g at 2, R. Vol. 2 at 24. Government counsel responded in the negative, and Mr. Alvarez's counsel stated, "[they] do not object to the calculation, but we do disagree with the recommendation." Id. at 3.

The district court also noted that Mr. Alvarez has a "significant criminal record," id., which placed him in criminal category IV. When that was combined with Mr. Alvarez's "two prior deportations which result in [Mr. Alvarez's] [entering and] returning . . . [a total of] three times to the country illegally," the court asked why a sentence other than a sentence within the advisory guideline range was appropriate. Id.

Defense counsel acknowledged Mr. Alvarez's significant criminal history, but argued that his felony drug trafficking offense was the "primary contributor to inflating his guideline range in several ways, to the extent that it is counted in several ways." Id. at 6. Thus, he sought a variance from the advisory guideline range on the ground that the sixteen-level enhancement under USSG § 2L1.2(b)(1)(A)(i) was unwarranted and unreasonable.

Additionally, Mr. Alvarez argued that the 18 U.S.C. § 3553(a) sentencing factors, especially deterrence, supported a variance. He also argued that since he had received a four-year sentence for his prior felony, it seemed inappropriate to receive a longer sentence for his reentry, and that a sentence of thirty-six months, rather that fifty-seven, would be adequate.

When the prosecutor addressed the court, he reminded the district court of Mr. Alvarez's two prior deportations and noted that Mr. Alvarez's prior state felony was very serious. The government attorney also reminded the court of Mr. Alvarez's three other criminal convictions (two driving while impaired and one harassment conviction).

The court then spoke, observing that "the defendant has had regular contact with the criminal justice system, as evidenced by his arrests in1997, 1999, 2001, 2002 and 2009, all of which resulted in convictions." Tr. of Sentencing Hr'g at 10, R. Vol. 2 at 32. With respect to his argument concerning the sixteen-level enhancement, the court characterized Mr. Alvarez's argument as an argument that "the application of the 16-level enhancement works some sort of injustice on the defendant." Id. at 9.

The court subsequently denied Mr. Alvarez's motion for a statutory sentence, stating "there really is no case law in this circuit that supports that argument." Id. It then sentenced him at the bottom of the guideline range, after also concluding that criminal category IV did not substantially over-represent the

seriousness of his criminal history.  Mr. Alvarez argues that his fifty-seven-month sentence is unreasonably high.

### DISCUSSION

We review a criminal defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007).  "A district court abuses its discretion 'when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable.'"  United States v. Beltran, 571 F.3d 1013, 1018 (10th Cir. 2009) (quoting United States v. Haley, 529 F.3d 1308, 1311 (10th Cir.), cert. denied, 129 S. Ct. 428 (2008)).  Reasonableness review has a procedural and a substantive component.  United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008).  "We may not examine the weight a district court assigns to various [28 U.S.C.] § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo.  Instead, we must 'give due deference to the district court's decision that the § 3553(a)factors, on a whole, justify the [sentence imposed]."  United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008) (quoting Gall, 552 U.S. at 51)).  A sentence imposed within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness.  United States v. Chavez-Suarez, 597 F.3d 1137, 1139-40 (10th Cir.), cert. denied, 2010 WL 2771443 (U.S. Oct. 4, 2010).

Mr. Alvarez explicitly only challenges the substantive reasonableness of his sentence.

Mr. Alvarez concedes that his sentence was not "arbitrary, capricious or whimsical." He argues, instead, that his sentence is "manifestly unreasonable." More specifically, Mr. Alvarez claims that "it was the [sixteen-level] enhancement [under USSG § 2L1.2(b)(1)(A)(i)], not Alvarez's offense-related conduct, that dictated his sentence. Such a scheme is not [a] substantively reasonable scheme." Appellant's Br. at 8. Indeed, he makes a broad challenge to the sixteen-level enhancement, asserting that there are "endemic problems with USSG § 2L1.2(b)(1)(A)(i)," Appellant's Br. at 8, and that "nearly any sentence that relies on [that] guideline is manifestly unreasonable." Id. at 9.

Mr. Alvarez identifies "two primary shortcomings with § 2L1.2(b)(1)(A)(i)": (1) the enhancement lacks "an articulated justification" and (2) the enhancement "creates unwarranted sentencing disparities." Id. at 9-10, 16. We address each of his arguments in turn.

## I. Lack of Articulated Justification

Mr. Alvarez explains the history and development of the sixteen-level enhancement and argues that the "Sentencing Commission has never explained why the 16-level enhancement exists nor how potential justifications—like concerns about recidivism—account for its design." Id. at 10. Mr. Alvarez

-8-

further argues that this lack of an explanation causes the "practical problem" in that "district courts cannot evaluate whether applying the enhancement effectively serves its intended purpose in a given case," and renders them "unable to meaningfully exercise their post-Booker[2] discretion, since they cannot discern the extent to which the enhancement executes or furthers the factors contained at 18 U.S.C. § 3553." Id. at 14-15.

In response, as the government argues, the Sentencing Commission was merely following Congressional policy to impose more severe *statutory* penalties on previously deported aliens with a criminal record, who illegally return to the United States. Thus, Mr. Alvarez's arguments really should be directed at Congress, not the Sentencing Commission.

Moreover, a number of courts have explicitly rejected this same argument. See United States v. Moreno-Padilla, 602 F.3d 802, 814 (7th Cir. 2010) ("[A] district court is not required to 'delve into the history of a guideline so that [it] can satisfy [it]self that the process that produced it was adequate to produce a good guideline.") (quoting United States v. Aguilar-Huerta, 576 F.3d 365, 368 (7th Cir. 2009)), petition for cert. filed (June 25, 2010, No. 10-5128); United States v. Lopez-Reyes, 589 F.3d 667, 671 (3d Cir. 2009) ("[A] district court is not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline."), cert. denied, 130 S.

_____

[2]United States v. Booker, 543 U.S. 220 (2005).

Ct. 2362 (2010) (quoted with approval in United States v. Irazoqui-Leyva, 2010 WL 4055666, *2 (10th Cir. Oct. 18, 2010) (unpublished); United States v. Mondragon-Santiago, 564 F.3d 357, 367 (5th Cir. 2009) ("In appropriate cases, district courts certainly may disagree with the Guidelines for policy reasons and may adjust a sentence accordingly.  But if they do not, we will not second-guess their decisions under a more lenient standard simply because the particular Guideline is not empirically-based.") (quoted with approval in Irazoqui-Leyva, 2010 WL 4055666, at *2); see also United States v. Flores-Escobar, 2010 WL 3910163, *2 (10th Cir. Oct. 6, 2010) (unpublished) ("To the extent that [defendant] argues that the § 2L1.2(b)(1)(B) enhancement is simply too punitive, such an argument is unpersuasive."); United States v. Ruiz-Terrazas, 477 F.3d 1196, 1204 (10th Cir. 2007) ("[W]e have routinely upheld as reasonable the use of prior convictions to calculate both the criminal history category and a sentence enhancement, where . . . the Guidelines authorize it.").

We agree with those statements and reject Mr. Alvarez's argument that the enhancement is invalid because it lacks a specific explanation and justification by the Sentencing Commission.  See United States v. Lewis, 2010 WL 4262020, *6 (10th Cir. Oct. 29, 2010) ("[T]he district court has no obligation to duplicate the efforts of the Sentencing Commission or Congress and decide what guidelines policy it would impose if it were the sole decision-maker.").

## II. Enhancement Creates Unwarranted Disparities

The second "problem" Mr. Alvarez identifies in the use of the sixteen-level enhancement is that it creates unwarranted disparities in three ways: (1) it makes no distinction based on the length of the prior sentence, as long as it exceeds thirteen months; (2) it makes no distinction based on the type or quantity of the drug involved in the earlier trafficking conviction; and (3) it makes no distinction based on the defendant's role in the prior offense.

As the government points out, these arguments would not, in fact, affect Mr. Alvarez's sentence, since he received a four-year sentence for his prior conviction (i.e., not the minimum thirteen-month sentence), the drug involved in his prior conviction was methamphetamine, an indisputably dangerous drug, and his prior conviction followed a search of his residence in which drugs were found (as well as on his person and in his car).

Moreover, we do not necessarily conclude that a conviction for marijuana possession, for example, is necessarily and in all cases a less severe crime than possession of another drug. And the thirteen-month minimum sentence required for the prior aggravated felony ensures that the crime was serious and significant, no matter what the actual sentence. We accordingly reject Mr. Alvarez's argument that the enhancement creates unwarranted disparities.

### III.  Substantive Reasonableness of Sentence

There is no other basis upon which Mr. Alvarez may successfully challenge the reasonableness of his sentence.  When evaluating the substantive reasonableness of a sentence, we "afford substantial deference to [the] district court[]," and determine "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  United States v. Martinez, 610 F.3d 1216, 1227 (10th Cir.) (further quotation omitted), cert. denied, 2010 WL 3780225 (U.S. Nov. 1, 2010, No. 10-6721).

In imposing Mr. Alvarez's sentence at the bottom of the guideline range, the district court considered the fact that Mr. Alvarez had already been deported twice to Mexico, and returned illegally after each deportation.  See Chavez-Suarez, 597 F.3d at 1139 (noting with approval the district court's consideration of "[d]efendant's past illegal reentries").  "Absent any contrary indication in the record, [we] . . . presume that a district court properly considered the pertinent statutory factors."  United States v. Rose, 185 F.3d 1108, 1111 (10th Cir. 1999). There is no basis for concluding that the experienced district court judge did not consider all the 3553(a) factors.

Further, as indicated above, since the sentence imposed was within the applicable guideline range, it is presumptively reasonable on appeal.  See United States v. Mumma, 509 F.3d 1239, 1243 (10th Cir. 2007).  While that presumption

-12-

is rebuttable, Mr. Alvarez has failed to convince us that the presumption should be discarded.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.