FILED
United States Court of Appeals
Tenth Circuit

December 10, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TYA DEJUAN TILLER,

Defendant-Appellant.

No. 13-3069
(D.C. No. 2:11-CR-20088-CM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLMES**, and **MATHESON**, Circuit Judges.

In this direct appeal, Defendant-Appellant Tya Dejuan Tiller challenges the

sentence imposed by the district court following her conviction on one count of

Social Security fraud and one count of theft of public money. Specifically, Ms.

Tiller disputes the substantive reasonableness of her sentence. The district court

sentenced her to a term of imprisonment of twelve months and one day and a term

---

[*]     After examining the briefs and appellate record, this panel has
decided unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

        This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

of supervised release of three years, and required her to pay restitution. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we **affirm**.

**I**

In September 2003, Ms. Tiller applied for Social Security Disability Insurance ("SSDI") benefits. She cited depression and several other mental-health impairments as reasons why she could not engage in substantial gainful employment. By signing her SSDI application, Ms. Tiller acknowledged her obligation to report any subsequent employment to the Social Security Administration ("SSA"). Ms. Tiller and her two dependent children began receiving SSDI benefits in 2004.

In January 2005, Ms. Tiller accepted a position with the United States Department of Veterans Affairs. She maintained this job until May 2007—but at no point during that time period did she report her employment status to the SSA as required. Then, from May 6, 2007 to February 28, 2010, Ms. Tiller worked for the Kansas Department of Social and Rehabilitation Services as a case manager. Once again, she failed to apprise the SSA of this development.

Acting on information that Ms. Tiller had collected SSDI benefits while working full-time for the State of Kansas, the SSA's Office of Inspector General commenced an investigation in June 2010. The agents determined that Ms. Tiller and her children received $87,799 in overpaid benefits during Ms. Tiller's time of unreported employment. The agents also discovered that Ms. Tiller had abused

-2-

her case-manager position to defraud the Supplemental Nutrition Assistance Program ("SNAP").[1]  Specifically, she falsified records to create SNAP accounts in the names of several individuals and purchased items for herself using the benefits earmarked for those accounts.  All told, Ms. Tiller unlawfully received $11,234 in SNAP benefits.

On October 6, 2011, Ms. Tiller was charged in an indictment with one count of Social Security fraud, in violation of 42 U.S.C. § 408(a)(4) (Count I), and one count of theft of public money, in violation of 18 U.S.C. § 641 (Count II).  Ms. Tiller filed a petition to plead guilty[2] to both counts on April 26, 2012, wherein she admitted (1) concealing her employment and income in order to receive SSDI payments, and (2) unlawfully obtaining SNAP benefits designated for other individuals.  Although she reported in her petition an exhaustive psychiatric medication regimen (and two related hospital admissions), Ms. Tiller also indicated that she understood the potential consequences of her plea—*viz.*, imprisonment for "not more than 5 years on Count 1; not more than 10 years on Count 2"; supervised release for "not more than 3 years"; and a maximum fine of $250,000.  R., Vol. I, at 14, 17, 20 (Pet., filed Apr. 26, 2012).  The district court

---

[1]     The United States Department of Agriculture administers SNAP and contracts with state agencies (such as Ms. Tiller's former employer) to distribute benefits.  Program participants receive cards that they can use to purchase groceries from designated retailers.

[2]     Ms. Tiller did not sign a written plea agreement.

accepted Ms. Tiller's petition to enter a plea of guilty and adjudged her guilty of the two offenses.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report; following numerous calculations, it ultimately assigned Ms. Tiller a total offense level of thirteen and a criminal history category of I, resulting in an advisory Guidelines range of twelve to eighteen months' imprisonment. *See* Presentence Investigation Report, ¶ 61, at 13 (filed Dec. 5, 2012) [hereinafter, "PSR"].[3] Ms. Tiller filed no contemporaneous objections to the PSR. However, two months before sentencing, she requested probation in light of her allegedly poor health, her parenting duties, and her belief that "she did nothing to conceal" her employment. R., Vol. I, at 21–25 (Mem., filed Jan. 25, 2013).

At Ms. Tiller's March 1, 2013, sentencing hearing, the government elicited testimony from an agent who had investigated the SNAP fraud. After argument from Ms. Tiller's counsel, and a personal statement from Ms. Tiller herself, the district court rejected her request for probation, adopted the PSR's findings, and imposed a within-Guidelines sentence of twelve months and one day of

---

[3] The Probation Office used the 2012 edition of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") in preparing the PSR. *See* PSR, ¶ 21, at 7. Neither party has objected to the use of the 2012 edition; accordingly, this version of the Guidelines provides the framework for our analysis here.

imprisonment and three years of supervised release (on both counts, to run concurrently). The court also ordered Ms. Tiller to pay restitution in the amount of $76,875.20. Ms. Tiller's timely appeal followed.

## II

We review a sentence for substantive reasonableness under the deferential abuse-of-discretion standard. *United States v. Martinez*, 610 F.3d 1216, 1227 (10th Cir. 2010). In our assessment, we determine "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (internal quotation marks omitted). We recognize that there is "a range of possible outcomes" in sentencing proceedings that "the facts and law at issue can fairly support." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). Thus, the fact that we might reasonably have imposed a different sentence does not warrant reversal of the district court. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

A sentence "within the correctly calculated Guidelines range . . . may be presumed reasonable on appeal." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). Ms. Tiller may rebut that presumption by demonstrating that the § 3553(a) factors justify a lower sentence. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). However, this court will find an abuse of discretion only if the district court "renders a judgment that is arbitrary,

-5-

capricious, whimsical, or manifestly unreasonable." *United States v. Muñoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (internal quotation marks omitted).

### III

The single issue presented for our review is whether the sentence imposed by the district court was substantively unreasonable. *See* Aplt. Opening Br. at 7 (distilling Ms. Tiller's argument "[a]s simply . . . that the sentence is too long"). According to Ms. Tiller, the district court abused its discretion by ignoring "the parsimony principle" expressed in 18 U.S.C. § 3553(a). *Id.* at 9 (internal quotation marks omitted); *see United States v. Ray*, 704 F.3d 1307, 1315 (10th Cir.) (noting that under § 3553(a), a district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of punishment" (internal quotation marks omitted)), *cert. denied*, --- U.S. ----, 133 S. Ct. 2812 (2013). Ms. Tiller advances four reasons that, in her view, justify a sentence of probation: (1) her offense was not one of "active concealment"; (2) her mental-health issues mitigate her culpability; (3) her children would be unreasonably burdened by her sentence; and (4) she requires no further deterrence or rehabilitation. We address—and reject—each contention in turn.

### A

While Ms. Tiller acknowledges that she defrauded the SSA, she considers her offense to be relatively benign. She argues that "[h]er behavior could almost

be described as a failure to notify the federal government of beginning work activity coupled with a failure to notify the government of an error on its part." Aplt. Opening Br. at 9. Ms. Tiller notes that she used her correct name, Social Security number, and birth date during the period of her unreported employment, and that she paid taxes on her earnings. In other words, as Ms. Tiller reasons, she was not hiding her malfeasance. She also suggests that "it is likely" that the SSA had continued to monitor her and that "[t]he only thing she could have done to be more transparent to the [SSA] (short of sending the notification letter that she failed to send) would have been to work directly for SSA itself." *Id.* at 10–11. We find the foregoing averments to be wholly unpersuasive.

To the extent that Ms. Tiller is suggesting that her conduct—viewed through the lens of her statute of conviction—is less culpable, she is mistaken. The statute takes clear and direct aim at such fraudulent lack of disclosure. Specifically, the statutory text provides:

> Whoever . . . having knowledge of the occurrence of any event affecting (1) [her] initial or continued right to any payment under this subchapter, or (2) the initial or continued right to any payment of any other individual in whose behalf [s]he has applied for or is receiving such payment, conceals *or fails to disclose such event with an intent fraudulently to secure payment* either in a greater amount than is due or when no payment is authorized . . . shall be guilty of a felony.

42 U.S.C. § 408(a)(4) (emphasis added). In other words, on its face, the statute draws no distinction for liability purposes between an individual who "actively

conceals" her fraudulent activity and one who does not. Ms. Tiller's admissions make clear that she: (1) knew obtaining employment would affect her right to receive SSDI payments; (2) failed to report her employment to the SSA when she did become employed; and (3) intended to continue collecting payments when she was no longer authorized to do so. Accordingly, there is no question that Ms. Tiller violated the statute in a straightforward fashion.

And we conclude that, as part of its overall evaluation of the 18 U.S.C. § 3553(a) factors, the district court conducted a reasonable assessment of "the nature and circumstances of [Ms. Tiller's] offense," *id.* § 3553(a)(1), and, in doing so, expressly considered her lack-of-active-concealment justification. The court's specific findings at sentencing evince and underscore this conclusion:

> I considered the nature and circumstances of your offense, again, including your failure to report your work for . . . a significant period of time, as well as your active role in committing food stamp fraud. I know this was part of your argument, that you did not actively conceal the fact that you were working. I would mention, the court did not find this to be sufficiently mitigating in regards to your argument, again, for probation. The court also would note . . . that your actions have unfairly tarnished the image and reputation of all those other public servants who do their job in a fair and honest manner.

R., Vol. II, at 102 (Tr. of Sentencing Hr'g, dated Mar. 1, 2013). At bottom, Ms. Tiller's argument amounts to a thinly veiled invitation to us to independently assess the weight the district court gave this § 3553(a) factor—an invitation we must reject. *See United States v. Alvarez-Bernabe*, 626 F.3d 1161, 1165 (10th

Cir. 2010) ("We may not examine the weight a district court assigns to various [18 U.S.C.] § 3553(a) factors . . . as a legal conclusion to be reviewed de novo." (first alteration in original) (internal quotation marks omitted)). Accordingly, we will not disturb on this basis the within-Guidelines sentence that the district court imposed on Ms. Tiller.

**B**

Next, Ms. Tiller contends that her sundry mental-health conditions justify probation. In particular, she argues that a downward variance is appropriate because she was a victim of sexual assault and stabbing—and, tragically, because her father was murdered when she was a child. Ms. Tiller has marshaled no case law in support of her mental-health arguments, however. Ultimately, we conclude that Ms. Tiller's arguments concerning these admittedly unfortunate circumstances do not rebut the presumption of reasonableness that we afford the district court's within-Guidelines sentence.

The district court expressly included Ms. Tiller's health concerns in its § 3553(a) calculus, noting, "[Y]ou do have a history of sexual and physical abuse . . . . You suffer from various mental and physical health conditions." R., Vol. II, at 101. However, the court observed, Ms. Tiller was "not the only one that has this" unfortunate history. *Id.* Quite simply, after thoughtfully considering her arguments in light of its sentencing experience, the court disagreed with Ms. Tiller's conclusions regarding the implications of these

circumstances for her sentence.

Mindful that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than . . . the appeals court," *Rita v. United States*, 551 U.S. 338, 357–58 (2007), we defer to the district court's reasoned judgment as to the import of Ms. Tiller's mental-health issues for an appropriate sentence. *See also Koon v. United States*, 518 U.S. 81, 98 (1996) ("District courts have an institutional advantage over appellate courts in making [§ 3553(a)] determinations, especially as they see so many more Guidelines cases than appellate courts do."). We conclude that Ms. Tiller has failed to rebut on this ground the presumption that her within-Guidelines sentence is substantively reasonable.

## C

Ms. Tiller also argues that the obligations she has to her two minor children militate in favor of a downward sentencing variance. She receives child-support payments from the children's father, but she is otherwise estranged from her family and is therefore the only person caring for the children on a daily basis. Thus, Ms. Tiller states, "A prison sentence that lapses into the next school year will place an undue burden on her two children." Aplt. Opening Br. at 13.

As with the other relevant § 3553(a) factors, the district court discussed Ms. Tiller's parenting duties at sentencing and concluded that they were not compelling. The court stated that while it "underst[ood] the burden

-10-

imprisonment . . . would have on her children," it was "not convinced that [her] situation is substantially different from other defendants who have children who will be adversely affected by a parent's imprisonment." R., Vol. II, at 101. In addition, the district court expressed its disapproval regarding Ms. Tiller's use of her children as part of her SSDI scheme. We find nothing unreasonable about any of these findings, and we note that no other record evidence suggests that Ms. Tiller's sentence was substantively unreasonable on this basis.

Ms. Tiller's cited legal authorities, moreover, do not alter this conclusion. Ms. Tiller's chosen case-law references are factually distinguishable, and only two constitute binding precedent. In that regard, in *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999) (dealing with a departure, not a variance), we *upheld* a sentencing court's decision to weight parenting duties heavily. We paid particular attention to the court's statement that it had "never seen [such] a combination" of mitigating factors. 173 F.3d at 808 (internal quotation marks omitted). There is no suggestion that Ms. Tiller's circumstances present such an "extraordinary" case. *Id.* Indeed, in marked contrast to Ms. Tiller's situation, the defendant in *Gauvin* had four young children whom, we noted, during his incarceration were "financially barely provided for, and parentally unprovided for." *Id.* Furthermore, just because we upheld the district court's decision to weigh heavily the defendant's family circumstances in *Gauvin* under a deferential abuse-of-discretion standard, does not dictate that we should find error in a

-11-

district court's decision *not* to do so, when applying the same deferential standard. *Cf. United States v. McGehee*, 672 F.3d 860, 877 (10th Cir. 2012) ("As a threshold matter, in *Gauvin*, we merely accorded the district court the requisite deference in upholding its decision to *grant* the two-level [acceptance-of-responsibility] reduction. We did not indicate that other sentencing courts would be obliged to reach the same conclusion on similar facts. In other words, giving other sentencing courts the same degree of deference, we might well uphold their decisions on similar facts to *deny* the acceptance-of-responsibility adjustment.").

Ms. Tiller's reliance on *United States v. Peña*, 930 F.2d 1486 (10th Cir. 1991)—a downward-departure case—is also misplaced. The defendant in *Peña* was the sole supporter for her two-month-old child, her teenage daughter, *and* her daughter's newborn baby. 930 F.2d at 1494. As a result, the district court could reasonably have been concerned about the impact of a prison sentence on her family. *Id.* Ms. Tiller's circumstances are clearly nowhere near as dire as those of the defendant in *Peña*; accordingly, her reliance on this case is unavailing. We conclude once again that Ms. Tiller has failed to rebut the presumption of reasonableness that we afford her within-Guidelines sentence.

**D**

Finally, Ms. Tiller contends that her sentence is "too long" because she requires no additional deterrence or rehabilitation. As she sees it, the fact that the district court *could* have imposed other sentences renders her own sentence

-12-

substantively unreasonable. Of course, we leave such judgments to the district court—not the defendant. Ms. Tiller's argument plainly amounts to one last-ditch request for this court to reweigh the § 3553(a) factors. We need not—and do not—do so.

It is patent that the district court reasonably considered the particular circumstances of the crime—as well as Ms. Tiller's unique personal circumstances—through the lens of the § 3553(a) factors, in arriving at its sentence. We have highlighted the court's consideration of Ms. Tiller's personal circumstances, *supra*. As for the crime, notably, the court considered: (1) the amount of government money Ms. Tiller unlawfully obtained; (2) the fact that Ms. Tiller defrauded *two* government programs; (3) the use of Ms. Tiller's children to perpetrate fraud; (4) the length of time Ms. Tiller defrauded the government; (5) the fact that Ms. Tiller abused her government position; and (6) the effect that Ms. Tiller's crime had on the image of government workers.

Certainly, as Ms. Tiller suggests, the district court had several sentencing options at its disposal. But this is neither a novel insight nor an appropriate inquiry for a substantive-reasonableness challenge. "The approach . . . , which calls for the appellate courts to substitute their views on the proper balance of the factors set out in § 3553(a) for those of the sentencing courts on the front lines, is patently at odds" with Supreme Court precedent. *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008). Ms. Tiller obviously disagrees with the sentence

-13-

imposed, but it is within the advisory Guidelines range and reflects a thorough weighing of the § 3553(a) factors. Accordingly, we are satisfied that the district court imposed a substantively reasonable sentence.

## IV

For all of the foregoing reasons, we conclude that the sentence imposed by the district court was substantively reasonable. Accordingly, we **affirm** Ms. Tiller's sentence.

Entered for the Court


JEROME A. HOLMES
Circuit Judge